37

**Fill in this information to identify the case:**

Debtor 1    Michael Antonio Curry

Debtor 2    Debra Susan Curry
(Spouse, if filing)

United States Bankruptcy Court for the:  Northern District of Illinois

Case number  17-10433

Official Form 410

# Proof of Claim

12/15

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Baxter Credit Union
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor   BCU

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Baxter Credit Union
Name

340 N Milwaukee Ave
Number          Street

Vernon Hills          IL          60061
City          State          ZIP Code

Contact phone  800-388-7000

Contact email  dob@bcu.org

Where should payments to the creditor be sent? (if different)

Name

Number          Street

City          State          ZIP Code

Contact phone

Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_____

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____     Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  _1_  _7_  _3_  _7_

**7. How much is the claim?**   $_____41,845.29. Does this amount include interest or other charges?

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

money loaned / 214 Chesapeake Bay  Winthrop Harbor

**9. Is all or part of the claim secured?**

☑ No

☐ Yes.  The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

Basis for perfection: _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                     $_____

Amount of the claim that is secured:      $_____

Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:     $_____

Annual Interest Rate (when case was filed) _____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.      $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No. | | |
|---|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check all that apply:* | | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $_____ |
| | ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies: | | $_____ |

\* Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:    Sign Below

| The person completing this proof of claim must sign and date it. FRBP 9011(b). | *Check the appropriate box:* |
|---|---|
| If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is. | ☑ I am the creditor. |
| | ☐ I am the creditor's attorney or authorized agent. |
| | ☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004. |
| | ☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005. |
| A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571. | I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt. |
| | I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct. |
| | I declare under penalty of perjury that the foregoing is true and correct. |

Executed on date  07/27/2017
⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
MM / DD / YYYY

*Dennis A O'Brien*
⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Dennis A O'Brien | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Bankruptcy Specialist | | |
| Company | Baxter Credit Union | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 340 N Milwaukee Ave | | |
| | Number      Street | | |
| | Vernon Hills | IL | 60061 |
| | City | State | ZIP Code |
| Contact phone | 847-932-8665 | Email dob@bcu.org | |

**CURRY,MICHAEL A Loan 37: WINTHROP HARBOR HOME EQUITY**

Transaction Summary  07/27/2017

| Post Date | ID | Eff Date | Transaction | Trans Amt | Balance Chg | Int/Pnlty | Fees | New Balance | Description | Prev Available |
|---|---|---|---|---|---|---|---|---|---|---|
| 07/25/2017 | L 37 | 07/25/2017 | %% LClnPmt Grace Dt 07/24/17 LC | 10.00 | | | | | | |
| 06/25/2017 | L 37 | 06/25/2017 | %% LClnPmt Grace Dt 06/24/17 LC | 10.00 | | | | | | |
| 05/25/2017 | L 37 | 05/25/2017 | %% LClnPmt Grace Dt 05/24/17 LC | 10.00 | | | | | | |
| 04/25/2017 | L 37 | 04/25/2017 | %% LClnPmt Grace Dt 04/24/17 LC | 10.00 | | | | | | |
| 03/28/2017 | L 37 | 03/28/2017 | COLLECTION FEE / Advance Adj... | 140.00 | 140.00 | 0.00 | 0.00 | 41,845.29 | | 0.00 |
| 03/21/2017 | L 37 | 03/21/2017 | From SCHULFER,LOGAN J 000300513 Share 01 / %% Transfer Pay... / %% PartialPmt 15.00 to 96.65 | 404.30 | -245.05 | 159.25 | 0.00 | 41,705.29 | | 0.00 |
| 03/08/2017 | L 37 | 03/08/2017 | From SCHULFER,LOGAN J 000300513 Share 01 / Transfer Pay... | 81.65 | 0.00 | 71.65 | 10.00 | 41,950.34 | | 0.00 |
| 02/14/2017 | L 37 | 02/14/2017 | From SCHULFER,LOGAN J 000300513 Share 01 / Transfer Pay... | 404.30 | -382.91 | 21.39 | 0.00 | 41,950.34 | | 0.00 |
| 01/25/2017 | L 37 | 01/25/2017 | %% LClnPmt Grace Dt 01/24/17 LC / Transfer Pay... | 404.30 | 0.00 | 384.30 | 20.00 | 42,333.25 | | 0.00 |
| 12/23/2016 | L 37 | 12/23/2016 | COLLECTION FEES / Advance Adj... | 325.00 | 325.00 | 0.00 | 0.00 | 42,333.25 | | 0.00 |
| 12/15/2016 | L 37 | 12/15/2016 | From SCHULFER,LOGAN J 000300513 Share 37 / Transfer Pay... | 404.30 | -165.28 | 239.02 | 0.00 | 42,008.25 | | 0.00 |
| 12/05/2016 | L 37 | 12/05/2016 | From SCHULFER,LOGAN J 000300513 Share 35 / Transfer Pay... / %% PartialPmt 127.07 to 0.00 | 404.30 | 0.00 | 404.30 | 0.00 | 42,173.53 | | 0.00 |
| 11/25/2016 | L 37 | 11/25/2016 | %% PartialPmt / Transfer Pay... 0.00 to 15.00 | 15.00 | 0.00 | 0.00 | 15.00 | 42,173.53 | | 0.00 |
| 10/25/2016 | L 37 | 10/25/2016 | From SCHULFER,LOGAN J 000300513 Share 01 LC | 10.00 | 10.00 | | | 42,173.53 | From Share 01 | 0.00 |
| 09/09/2016 | L 37 | 09/09/2016 | %% PartialPmt / Transfer Pay... 0.00 to 15.00 | 681.53 | -383.66 | 287.87 | 10.00 | 42,173.53 | From Share 01 | 0.00 |
| 08/25/2016 | L 37 | 08/25/2016 | %% LClnPmt Grace Dt 08/24/16 LC 94.36 to 127.07 | 10.00 | | | | | | |
| 08/21/2016 | L 37 | 08/21/2016 | %% PartialPmt / Transfer Pay... 32.71 to 127.07 | 32.71 | 0.00 | 32.71 | 0.00 | 42,557.19 | From Share 70 | 0.00 |
| 08/09/2016 | L 37 | 08/09/2016 | %% PartialPmt / Transfer Pay... 0.00 to 94.36 | 94.36 | 0.00 | 94.36 | 0.00 | 42,557.19 | From Share 70 | 0.00 |
| 07/09/2016 | L 37 | 07/09/2016 | Transfer Pay... | 404.30 | -202.57 | 201.73 | 0.00 | 42,557.19 | From Share 70 | 0.00 |
| 06/09/2016 | L 37 | 06/09/2016 | Transfer Pay... | 404.30 | -194.89 | 209.41 | 0.00 | 42,759.76 | From Share 70 | 0.00 |
| 05/09/2016 | L 37 | 05/09/2016 | Transfer Pay... | 404.30 | -200.70 | 203.60 | 0.00 | 42,954.65 | From Share 70 | 0.00 |
| 04/09/2016 | L 37 | 04/09/2016 | Transfer Pay... | 404.30 | -192.97 | 211.33 | 0.00 | 43,155.35 | From Share 70 | 0.00 |
| 03/09/2016 | L 37 | 03/09/2016 | Transfer Pay... | 404.30 | -205.67 | 198.63 | 0.00 | 43,348.32 | From Share 70 | 0.00 |
| 02/09/2016 | L 37 | 02/09/2016 | Transfer Pay... | 404.30 | -191.04 | 213.26 | 0.00 | 43,553.99 | From Share 70 | 0.00 |
| 01/09/2016 | L 37 | 01/09/2016 | Transfer Pay... | 404.30 | -190.11 | 214.19 | 0.00 | 43,745.03 | From Share 70 | 0.00 |
| 12/09/2015 | L 37 | 12/09/2015 | Transfer Pay... | 404.30 | -196.10 | 208.20 | 0.00 | 43,935.14 | From Share 70 | 0.00 |
| 11/09/2015 | L 37 | 11/09/2015 | Transfer Pay... | 404.30 | -188.24 | 216.06 | 0.00 | 44,131.24 | From Share 70 | 0.00 |
| 10/09/2015 | L 37 | 10/09/2015 | Transfer Pay... | 404.30 | -194.29 | 210.01 | 0.00 | 44,319.48 | From Share 70 | 0.00 |
| 09/09/2015 | L 37 | 09/09/2015 | Transfer Pay... | 404.30 | -186.38 | 217.92 | 0.00 | 44,513.77 | From Share 70 | 0.00 |

## CURRY,MICHAEL A Loan 37: WINTHROP HARBOR HOME EQUITY — Transaction Summary — 07/27/2017

| Post Date | ID | Eff Date | Transaction | Trans Amt | Balance Chg | Int/Pnlty | Fees | NewBalance | Description | Prev Available |
|---|---|---|---|---|---|---|---|---|---|---|
| 08/09/2015 | L37 | 08/09/2015 | Transfer Pay... | 404.30 | -185.48 | 218.82 | 0.00 | 44,700.15 | From Share 70 | 0.00 |
| 07/09/2015 | L37 | 07/09/2015 | Transfer Pay... | 404.30 | -191.63 | 212.67 | 0.00 | 44,885.63 | From Share 70 | 0.00 |
| 06/09/2015 | L37 | 06/09/2015 | Transfer Pay... | 404.30 | -183.65 | 220.65 | 0.00 | 45,077.26 | From Share 70 | 0.00 |
| 05/09/2015 | L37 | 05/09/2015 | Transfer Pay... | 404.30 | -189.87 | 214.43 | 0.00 | 45,260.91 | From Share 70 | 0.00 |
| 04/09/2015 | L37 | 04/09/2015 | Transfer Pay... | 404.30 | -181.84 | 222.46 | 0.00 | 45,450.78 | From Share 70 | 0.00 |
| 03/09/2015 | L37 | 03/09/2015 | Transfer Pay... | 404.30 | -202.47 | 201.83 | 0.00 | 45,632.62 | From Share 70 | 0.00 |
| 02/09/2015 | L37 | 02/09/2015 | Transfer Pay... | 404.30 | -179.97 | 224.33 | 0.00 | 45,835.09 | From Share 70 | 0.00 |
| 01/09/2015 | L37 | 01/09/2015 | Transfer Pay... | 404.30 | -179.10 | 225.20 | 0.00 | 46,015.06 | From Share 70 | 0.00 |
| 12/09/2014 | L37 | 12/09/2014 | Transfer Pay... | 404.30 | -185.49 | 218.81 | 0.00 | 46,194.16 | From Share 70 | 0.00 |
| 11/09/2014 | L37 | 11/09/2014 | Transfer Pay... | 404.30 | -177.33 | 226.97 | 0.00 | 46,379.65 | From Share 70 | 0.00 |
| 10/09/2014 | L37 | 10/09/2014 | Transfer Pay... | 404.30 | -183.79 | 220.51 | 0.00 | 46,556.98 | From Share 70 | 0.00 |
| 09/09/2014 | L37 | 09/09/2014 | Transfer Pay... | 404.30 | -175.58 | 228.72 | 0.00 | 46,740.77 | From Share 70 | 0.00 |
| 08/09/2014 | L37 | 08/09/2014 | Transfer Pay... | 404.30 | -174.73 | 229.57 | 0.00 | 46,916.35 | From Share 70 | 0.00 |
| 07/09/2014 | L37 | 07/09/2014 | Transfer Pay... | 404.30 | -181.28 | 223.02 | 0.00 | 47,091.08 | From Share 70 | 0.00 |
| 06/09/2014 | L37 | 06/09/2014 | Transfer Pay... | 404.30 | -173.00 | 231.30 | 0.00 | 47,272.36 | From Share 70 | 0.00 |
| 05/09/2014 | L37 | 05/09/2014 | Transfer Pay... | 404.30 | -179.61 | 224.69 | 0.00 | 47,445.36 | From Share 70 | 0.00 |
| 04/09/2014 | L37 | 04/09/2014 | Transfer Pay... | 404.30 | -171.29 | 233.01 | 0.00 | 47,624.97 | From Share 70 | 0.00 |
| 03/09/2014 | L37 | 03/09/2014 | Transfer Pay... | 404.30 | -192.99 | 211.31 | 0.00 | 47,796.26 | From Share 70 | 0.00 |
| 02/09/2014 | L37 | 02/09/2014 | Transfer Pay... | 404.30 | -169.52 | 234.78 | 0.00 | 47,989.25 | From Share 70 | 0.00 |
| 01/09/2014 | L37 | 01/09/2014 | Transfer Pay... | 404.30 | -168.70 | 235.60 | 0.00 | 48,158.77 | From Share 70 | 0.00 |
| 12/09/2013 | L37 | 12/09/2013 | Transfer Pay... | 404.30 | -175.47 | 228.83 | 0.00 | 48,327.47 | From Share 70 | 0.00 |
| 11/09/2013 | L37 | 11/09/2013 | Transfer Pay... | 404.30 | -167.03 | 237.27 | 0.00 | 48,502.94 | From Share 70 | 0.00 |
| 10/09/2013 | L37 | 10/09/2013 | Transfer Pay... | 404.30 | -42.54 | 361.76 | 0.00 | 48,669.97 | From Share 70 | 0.00 |
| 09/09/2013 | L37 | 09/09/2013 | Transfer Pay... | 404.30 | 0.00 | 404.30 | 0.00 | 48,712.51 | From Share 70 | 0.00 |
| | | | %%% PartialPmt... | 0.00 to 10.00 | | | | | | |
| | | | %% PartialPmt... | 0.00 to 63.99 | | | | | | |
| 07/15/2013 | L37 | 07/15/2013 | %% PartialPmt... | 394.33 | 0.00 | 384.33 | 10.00 | 48,712.51 | From Share 70 | 0.00 |
| 05/15/2013 | L37 | 05/15/2013 | Home Bankin... | 394.33 | -63.99 | 330.34 | 0.00 | 48,712.51 | From Share 70 | 0.00 |
| 04/15/2013 | L37 | 04/15/2013 | Home Bankin... | 394.33 | -52.61 | 341.72 | 0.00 | 48,776.50 | From Share 70 | 0.00 |
| 03/15/2013 | L37 | 03/15/2013 | Home Bankin... | 394.33 | -85.14 | 309.19 | 0.00 | 48,829.11 | From Share 70 | 0.00 |
| 02/15/2013 | L37 | 02/15/2013 | Home Bankin... | 394.33 | -51.65 | 342.68 | 0.00 | 48,914.25 | From Share 70 | 0.00 |
| 01/15/2013 | L37 | 01/15/2013 | Home Bankin... | 394.33 | -51.29 | 343.04 | 0.00 | 48,965.90 | From Share 70 | 0.00 |
| 12/15/2012 | L37 | 12/15/2012 | Home Bankin... | 394.33 | -61.94 | 332.39 | 0.00 | 49,017.19 | From Share 70 | 0.00 |
| 11/15/2012 | L37 | 11/15/2012 | Home Bankin... | 394.33 | -50.50 | 343.83 | 0.00 | 49,079.13 | From Share 70 | 0.00 |
| 10/15/2012 | L37 | 10/15/2012 | Home Bankin... | 394.33 | -61.18 | 333.15 | 0.00 | 49,129.63 | From Share 70 | 0.00 |
| 09/15/2012 | L37 | 09/15/2012 | Home Bankin... | 394.33 | -49.73 | 344.60 | 0.00 | 49,190.81 | From Share 70 | 0.00 |
| 08/15/2012 | L37 | 08/15/2012 | Home Bankin... | 394.33 | -49.38 | 344.95 | 0.00 | 49,240.54 | From Share 70 | 0.00 |
| 07/15/2012 | L37 | 07/15/2012 | Home Bankin... | 394.33 | -60.10 | 334.23 | 0.00 | 49,289.92 | From Share 70 | 0.00 |
| 06/15/2012 | L37 | 06/15/2012 | Home Bankin... | 394.33 | -48.62 | 345.71 | 0.00 | 49,350.02 | From Share 70 | 0.00 |
| 05/15/2012 | L37 | 05/15/2012 | Home Bankin... | 394.33 | -59.37 | 334.96 | 0.00 | 49,398.64 | From Share 70 | 0.00 |
| 04/15/2012 | L37 | 04/15/2012 | Home Bankin... | 394.33 | -47.87 | 346.46 | 0.00 | 49,458.01 | From Share 70 | 0.00 |
| 03/15/2012 | L37 | 03/15/2012 | Home Bankin... | 394.33 | -69.77 | 324.56 | 0.00 | 49,505.88 | From Share 70 | 0.00 |
| 02/15/2012 | L37 | 02/15/2012 | Home Bankin... | 394.33 | -47.05 | 347.28 | 0.00 | 49,575.65 | From Share 70 | 0.00 |
| 01/15/2012 | L37 | 01/15/2012 | Home Bankin... | 394.33 | -46.73 | 347.60 | 0.00 | 49,622.70 | From Share 70 | 0.00 |

## CURRY,MICHAEL A Loan 37: WINTHROP HARBOR HOME EQUITY

**Transaction Summary**   07/27/2017

| Post Date | ID | Eff Date | Transaction | Trans Amt | Balance Chg | Int/Pnlty | Fees | New Balance | Transaction Description | Prev Available |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/15/2011 | L 37 | 12/15/2011 | Home Bankin... | 394.33 | -57.55 | 336.78 | 0.00 | 49,669.43 | From Share 70 | 0.00 |
| 11/15/2011 | L 37 | 11/15/2011 | Home Bankin... | 394.33 | -46.00 | 348.33 | 0.00 | 49,726.98 | From Share 70 | 0.00 |
| 10/15/2011 | L 37 | 10/15/2011 | Home Bankin... | 394.33 | -56.85 | 337.48 | 0.00 | 49,772.98 | From Share 70 | 0.00 |
| 09/15/2011 | L 37 | 09/15/2011 | Home Bankin... | 394.33 | -45.29 | 349.04 | 0.00 | 49,829.83 | From Share 70 | 0.00 |
| 08/15/2011 | L 37 | 08/15/2011 | Home Bankin... | 394.33 | -44.97 | 349.36 | 0.00 | 49,875.12 | From Share 70 | 0.00 |
| 07/15/2011 | L 37 | 07/15/2011 | Home Bankin... | 394.33 | -55.86 | 338.47 | 0.00 | 49,920.09 | From Share 70 | 0.00 |
| 06/15/2011 | L 37 | 06/15/2011 | Home Bankin... | 394.33 | -33.06 | 361.27 | 0.00 | 49,975.95 | From Share 70 | 0.00 |
| 05/15/2011 | L 37 | [05/14/2011] | Home Bankin... | 394.33 | -66.49 | 327.84 | 0.00 | 50,009.01 | From Share 70 | 0.00 |
| 04/15/2011 | L 37 | 04/15/2011 | Home Bankin... | 394.33 | -43.58 | 350.75 | 0.00 | 50,075.50 | From Share 70 | 0.00 |
| 03/15/2011 | L 37 | 03/15/2011 | Home Bankin... | 394.33 | -77.04 | 317.29 | 0.00 | 50,119.08 | From Share 70 | 0.00 |
| 02/15/2011 | L 37 | 02/15/2011 | Home Bankin... | 394.33 | -42.74 | 351.59 | 0.00 | 50,196.12 | From Share 70 | 0.00 |
| 01/15/2011 | L 37 | 01/15/2011 | Home Bankin... | 394.33 | -42.44 | 351.89 | 0.00 | 50,238.86 | From Share 70 | 0.00 |
| 12/15/2010 | L 37 | 12/15/2010 | Home Bankin... | 394.33 | -53.43 | 340.90 | 0.00 | 50,281.30 | From Share 70 | 0.00 |
| 11/15/2010 | L 37 | 11/15/2010 | Home Bankin... | 394.33 | -53.07 | 341.26 | 0.00 | 50,334.73 | From Share 70 | 0.00 |
| 10/16/2010 | L 37 | 10/16/2010 | Home Bankin... | 394.33 | -41.41 | 352.92 | 0.00 | 50,387.80 | From Share 70 | 0.00 |
| 09/15/2010 | L 37 | 09/15/2010 | Home Bankin... | 394.33 | -41.12 | 353.21 | 0.00 | 50,429.21 | From Share 70 | 0.00 |
| 08/15/2010 | L 37 | 08/15/2010 | Home Bankin... | 394.33 | -40.83 | 353.50 | 0.00 | 50,470.33 | From Share 70 | 0.00 |
| 07/15/2010 | L 37 | 07/15/2010 | Home Bankin... | 394.33 | -51.89 | 342.44 | 0.00 | 50,511.16 | From Share 70 | 0.00 |





## TRUTH IN LENDING DISCLOSURE STATEMENT

| LOAN DATE 05-15-2006 | LOAN NUMBER | ACCOUNT NUMBER | MATURITY DATE 05-15-2013 |
|---|---|---|---|

| BORROWER 1 | BORROWER 2 |
|---|---|
| NAME AND ADDRESS<br>MICHAEL A. CURRY, JR. SR<br>214 CHESAPEAKE BAY<br>WINTHROP HARBOR, IL 60096 | NAME (AND ADDRESS IF DIFFERENT FROM BORROWER 1)<br>DEBRA S. CURRY<br>214 CHESAPEAKE BAY<br>WINTHROP HARBOR, IL 60096 |

### TRUTH IN LENDING DISCLOSURE   "e" means estimate

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. | The total cost of your purchase on credit, including your downpayment of $ |
| 8.248 % | $29,335.33 | $52,500.00 | $81,835.33 | $ n/a |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due | |
|---|---|---|---|
| 83 | $ 394.33 | monthly | 06-15-2006 |
| 1 | $ 49,105.94 | | 05-15-2013 |

**Required Deposit:** The Annual Percentage Rate does not take into account your required deposit, if any.

**Property Insurance:** You may obtain property insurance from anyone you want that is acceptable to the credit union. If you get the insurance from the credit union you will pay
$

☐ **Variable Rate** (Check if applicable)

☐ **Consumer Loan:** The annual percentage rate may increase during the term of this transaction if:

☐ **Real Estate Loan:** Your loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

| **Itemization** You have the right to receive at this time an Itemization of the Amount Financed. | Filing Fees | Non-Filing Insurance |
|---|---|---|
| ☐ I want an itemization.   ☐ I do not want an itemization. | $ | $ |

**Security** You are giving a security interest in

☐ your shares and deposits in the credit union.

☐ the goods or property being purchased.

☐ collateral securing other loans with the credit union will also secure this loan.

☒ your dwelling.

☐ other (describe)

☐ **VSI** You must obtain Vendor Single Interest insurance to obtain this loan. You may purchase the insurance from anyone you want that is acceptable to the credit union. If you get the insurance from the credit union you will pay $ _____ . All subrogation rights are waived by the insurer.

**Late Charge**
5.000% OF THE OVERDUE PAYMENT OF PRINCIPAL AND INTEREST WITH A MAX OF $10.00 IF MORE THAN 15 DAYS LATE

**Prepayment** If you pay off early, you ☒ may ☐ will not   have to pay a penalty.

☐ may ☐ will not   be entitled to a refund of the finance charge.

☒ **Assumption** Someone buying your house or mobile home

☐ may, subject to conditions, be allowed to assume the remainder of the mortgage on the original terms.

☒ cannot assume the remainder of the mortgage on the original terms.

☐ **Demand** This obligation has a demand feature.

☐ All disclosures are based on an assumed maturity of one year.

See your contract documents for any additional information about nonpayment, default, any required payment in full before the scheduled date, and prepayment penalties.

You acknowledge that you have received and read this disclosure. (Borrower signatures are optional.)

| X | DATE | X | DATE |
|---|---|---|---|
| BORROWER 1 | | BORROWER 2 | |

© CUNA MUTUAL INSURANCE SOCIETY, 1995,1999, 2005, ALL RIGHTS RESERVED

MXX120 (LASER)

| BAXTER CREDIT UNION | MICHAEL A. CURRY, JR.; DEBRA S. CURRY | MEMBER | |
|---|---|---|---|
| 400 N LAKEVIEW PARKWAY | 214 CHESAPEAKE BAY | Date | 05-15-2006 |
| VERNON HILLS, IL 60061 | WINTHROP HARBOR, IL 60096 | Mat. Date | 05-15-2013 |
| | | Loan Amt. $ | 52,500.00 |
| | | Renewal Of | |
| | | Mem./Loan | |
| **LENDER'S NAME AND ADDRESS** "You" means the Lender, its successors and assigns. | **BORROWER'S NAME AND ADDRESS** "I" includes each Borrower above, jointly and severally. | | |

## 1. PROMISE TO PAY AND PAYMENT TERMS

For value received, I promise to pay you the principal amount of $52,500.00 _____ , plus interest, accruing on the unpaid balance at the rate of ___8.240__ % per year from 05-15-2006 _____ until PAID IN FULL _____ . Interest accrues on a ACTUAL/365 _____ basis. The purpose of this loan is HOME IMPROVEMENT/HOME PURCHASE _____ .

[X] **Single Advance.** I will receive all of this principal sum on 05-15-2006 _____ . No additional advances are contemplated under this note.

[ ] **Multiple Advance.** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____ _____ I will receive the amount of $ _____ and future principal advances are contemplated.

You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

Conditions. The conditions for future advances are _____ _____ _____

[ ] **VARIABLE RATE.** The rate may then change as stated below.

Change Dates. Each date on which the interest rate may change is called a Change Date. The interest rate may change _____ _____ and on every _____ thereafter.

The Index. Beginning with the first Change Date, the interest rate will be based on the following Index: _____ _____ _____ .

The most recent Index value available as of the date [ ] 45 days [ ] _____ before each Change Date is called the "Current Index."

Calculation of Change. Before each Change Date, the Lender will calculate the interest rate, which will be _____ _____ the Current Index. The result of this calculation will be rounded _____ . The new interest rate will become effective on each Change Date. Subject to any limitations below, this will be the new interest rate until the next Change Date.

Limitations. The interest rate will never be greater than _____ % or less than _____ %.

[ ] The interest rate will never change on any single Change Date by more than _____ %.

Effect of Variable Rate. A change in the interest rate will have the following effect on the payments:

[ ] The amount of each scheduled payment will change.     [ ] The amount of the final payment will change.

[ ] _____

[X] **LATE CHARGE.** I agree to pay a late charge on the portion of any payment not made within 15 _____ days after it is due equal to 5.000% OF THE OVERDUE PAYMENT OF PRINCIPAL AND INTEREST WITH A MAX OF $10.00 _____ .

[X] **RETURN CHECK CHARGE.** I agree to pay the greater of $ 25.00 _____ or all costs and expenses incurred in connection with any payment on this loan that is returned because it has been dishonored.

[X] **ADDITIONAL CHARGES.** In addition to interest, I agree to pay the following charges which [ ] are [X] are not included in the principal amount above: _____ .

**ADDITIONAL TERMS.** A MORTGAGE BEARING THE SAME DATE AND TERMS

**PAYMENTS.** I agree to pay this note as follows: 83 MONTHLY PAYMENTS OF $394.33 BEGINNING 06-15-2006 AND 1 BALLOON PAYMENT OF $49,105.94 ON 05-15-2013.

HOME LOAN/MISCELLANEOUS PURPOSE - CLOSED END CREDIT

Expere™ ©1981, 1994, 2000 Bankers Systems, Inc., St. Cloud, MN  Form HL-CU-IL 1/8/2002                    (page 1 of 3)

## 2. SECURITY

You have certain rights that may affect my property.

(a) ☐ For value received, I assign and give to you a security interest in ☐ all my Account(s) or ☐ _____
_____ Account(s). The amount of my Required Balance is $_____

(b) ☐ This loan is secured by _____ , dated _____

## 3. ADDITIONAL TERMS OF THE LOAN AGREEMENT

**DEFINITIONS.** As used in this Loan Agreement, ☒ means terms that apply to this Loan Agreement. "Loan Agreement" refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction, such as applications, security agreements, disclosures, or notes. The pronouns "I," "me" and "my" refer to each Borrower signing this Loan Agreement, individually and together with their heirs, successors and assigns, and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Loan Agreement. "You" and "your" refer to the Lender, with its participants or syndicators, successors and assigns, or any person or company that acquires an interest in the Loan Agreement. Property means any property, real, personal, or intangible, that secures my performance of the obligation of this Loan Agreement. "Account" means any and all share or deposit accounts held by you and includes, but is not limited to, accounts such as share, share draft, checking and term share accounts, including renewals and substitutions of the accounts. "Required Balance" means the amount of funds I must maintain in my Account(s) to secure this Loan Agreement.

**PAYMENTS.** Each payment I make on this Loan Agreement will be applied first to any charges I owe other than principal and interest, then to interest that is due, and finally to principal that is due. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment. The actual amount of my final payment will depend on the interest rates (if variable) and my payment record.

**PREPAYMENT.** I may prepay this Loan Agreement in whole or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**INTEREST.** Interest will accrue on the unpaid principal balance until paid in full. If "Variable Rate" is checked, I will pay interest at the rates in effect from time to time. Decreases in the interest rate for this Loan Agreement will have the opposite effect on payments that increases would have. The interest rate(s) and other charges on this Loan Agreement will never exceed the highest rate or charge allowed by law for this loan. If the amount collected is found to exceed the highest rate or charge allowed, you will refund an amount necessary to comply with the law. You will figure a change in the interest rate by using the index rate in effect at the time the interest rate is to change. Changes in the index between scheduled changes in the interest rate will not affect the interest rate.

**INDEX.** If you and I have agreed that the interest rate on this Loan Agreement will be variable and will be related to an index, then the index you select will function only as a tool for setting the rate on this note. You do not guaranty, by selecting any index, that the interest rate on this note will be the same rate you charge on any other loan or class of loans you make to me or any other borrower. If this index is no longer available, you will substitute a similar index. You will give me notice of your choice.

**ACCRUAL METHOD.** The amount of interest that I will pay on this Loan Agreement will be calculated using the interest rate and accrual method stated. For interest calculation, the accrual method will determine the number of days in a year. If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**COMMISSIONS OR OTHER REMUNERATION.** I understand and agree that some payments to third parties as a part of the Loan Agreement may involve money retained by you or paid back to you as commissions or other remuneration.

**COLLATERAL PROTECTION INSURANCE NOTICE.** Unless I provide you with evidence of the insurance coverage required by my agreement with you, you may purchase insurance at my expense to protect your interests in my collateral. This insurance may, but need not, protect my interest. The coverage that you purchase may not pay any claim that I make or any claim that is made against me in connection with the collateral. I may later cancel any insurance purchased by you, but only after providing you with evidence that I have obtained insurance as required by our agreement. If you purchase insurance for the collateral, I will be responsible for the premiums for that insurance, including interest and any other charges you may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The premiums may be added to my total outstanding balance or obligation. The premiums may be more than the premiums for insurance I may be able to obtain on my own.

**SINGLE ADVANCE LOANS.** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the PAYMENTS BY LENDER section.

**MULTIPLE ADVANCE LOANS.** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal, subject to the conditions of any separate agreement.

**PAYMENTS BY LENDER.** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this Loan Agreement. Or you may demand immediate payment of the charges.

**REAL ESTATE OR RESIDENCE SECURITY.** If this Loan Agreement is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by this agreement.

**SECURITY INTEREST IN ACCOUNTS.** If an amount is entered on the Required Balance area, I must maintain a balance in my Account(s) equal to the lesser of the Required Balance or the amount remaining unpaid on the secured debt. No joint owner, beneficiary, surviving spouse or representative of my estate receives any rights in my Account(s) in the event of my death or incapacity until the secured debt is paid in full.

The security interest will not attach to any Account where my rights arise only in a representative capacity, or to any Individual Retirement Account or other tax-deferred retirement account. My Account(s) will not secure a debt created by a consumer credit transaction under a credit card plan. If any Account is jointly held, this security interest will attach to that portion of the account balance in the pledged Account(s) which I am authorized by law or agreement to pledge by my signature alone.

**DEFAULT.** Subject to any limitations in the REAL ESTATE OR RESIDENCE SECURITY section, I will be in default if any of the following occur:
(a) I fail to make a payment when due; or
(b) I fail to perform any condition or keep any promise or covenant of this or any agreement I have made with you.

**REMEDIES.** Subject to any limitations in the REAL ESTATE OR RESIDENCE SECURITY section, after I default, you may at your option do any one or more of the following:
(a) Make all or any part of the amount owing by the terms of this Loan Agreement due;
(b) Use any and all remedies you have under state or federal law, or in any instrument securing this Loan Agreement;
(c) Make a claim for any and all insurance benefits or refunds that may be available on my default;
(d) Withdraw the amounts in my Account(s) and apply them toward the secured debt (even if the withdrawal causes a penalty or may subsequently cause a share draft to be dishonored);
(e) Make amounts advanced on my behalf due and add those amounts to the balance owing under the terms of this Loan Agreement;
(f) Pay taxes or other charges, or purchase any required insurance, if I fail to do these things (but you are not required to do so). You may add the amount you pay to this Loan Agreement and accrue interest on that amount at the interest rate(s) in effect from time to time, on this Loan Agreement until paid in full;

By choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

*(page 2 of 3)*

Experts™ ©1981, 1994, 2000 Bankers Systems, Inc., St. Cloud, MN Form HL-CU-IL 1/8/2002

ASSUMPTIONS. Someone buying the Property cannot assume the obligation. You may declare the entire balance of the Loan Agreement to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, or transfer of the Property. This right is subject to the restrictions imposed by federal law (12 CFR 591), as applicable.

WAIVERS AND CONSENT. To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate, and notice of dishonor. In addition, I, to the extent permitted by law, consent to certain actions you may take, and generally waive all defenses that may be available based on these actions or based on the status of a party to this Loan Agreement. You may renew or extend payments on this Loan Agreement, regardless of the number of such renewals or extensions. You may release any Borrower, endorser, guarantor, surety, accommodation maker, or any other co-signer. You may release, substitute, or impair any Property securing this Loan Agreement. You, or any institution participating in this Loan Agreement, may invoke your right of set-off. You may enter into any sales, repurchases, or participations of this Loan Agreement to any person in any amounts and I waive notice of such sales, repurchases, or participations. I agree that any of us signing this Loan Agreement as Borrower is authorized to modify the terms of this Loan Agreement or any instrument securing, guarantying, or relating to this Loan Agreement. I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

I waive all rights I have now or in the future as a homestead exemption in the Property.

COLLECTION EXPENSES AND ATTORNEYS' FEES. On or after Default, to the extent permitted by law, I agree to pay all reasonable expenses of collection, enforcement, or protection of your rights and remedies under this Loan Agreement. Expenses include all costs and disbursements, including reasonable attorneys' fees and collection agency charges, incurred to collect or enforce this debt. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the rate provided in the terms of this Loan Agreement. All fees and expenses will be secured by the Property I have granted you, if any. To the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

SET-OFF. You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Loan Agreement against any right I have to receive money from you. My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Loan Agreement" means the total amount to which you are entitled to demand payment under the terms of this Loan Agreement at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay this Loan Agreement, your right of set-off will be limited to my proportionate interest in the obligation. In the absence of reasonable proof of net contributions, my proportionate interest equals the amount of such obligation divided equally by all parties having present rights to receive such money.

In addition, you may also have rights under a "statutory lien." A "statutory lien" means your right under state or federal law to establish a right in, or claim to, my shares and dividends to the extent of any outstanding financial obligations that I have with you. If you have a statutory lien, you may without further notice, impress and enforce the statutory lien on my shares and dividends to the extent of any sums due and payable under the terms of this Loan Agreement that I fail to satisfy.

Your set-off and statutory lien rights do not apply to an account or other obligation where my rights arise only in a representative capacity. They also do not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check or share draft when the dishonor occurs because you set-off against any of my accounts, or exercised your statutory lien rights. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off or statutory lien rights.

WARRANTIES AND REPRESENTATIONS. I have the right and authority to enter into this Loan Agreement. The execution and delivery of this Loan Agreement will not violate any agreement governing me or to which I am a party.

OTHER SECURITY. Any present or future agreement securing any other debt I owe you also will secure the payment of this Loan Agreement. Property securing another debt will not secure this loan if such property is my principal dwelling and you fail to provide any required notice of right of rescission. Also, property securing another debt will not secure this loan to the extent such property is in household goods.

GENERAL PROVISIONS. If two or more Borrowers sign this Loan Agreement, we are liable to repay jointly and severally. This Loan Agreement is the complete and final expression of the agreement and may not be amended or modified by oral agreement. If any provision of this Loan Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will be enforceable. This Loan Agreement is governed by the bylaws of this Credit Union and the laws of Illinois, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located.

Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to my last known address. Notice to one party will be deemed to be notice to all parties. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete.

I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan Agreement and to confirm your lien status on any Property. Time is of the essence.

4. SIGNATURES

SIGNATURES. By signing, I agree to the terms contained in this Loan Agreement. I also acknowledge receipt of a copy of this Loan Agreement on today's date.

✍X _____

MICHAEL A. CURRY, JR.    S R.

✍X _____

✍X _____

✍X _____

DEBRA S. CURRY

✍X _____

✍X _____

| (Optional) |
| Signed _____ For Lender |
| Title _____ |

Attach FTC "Preservation of Consumer Claims and Defenses" Notice if Applicable

Experta® ©1981, 1994, 2000 Bankers Systems, Inc., St. Cloud, MN  Form HL-CU-IL  1/8/2002

(page 3 of 3)

This document was prepared by:
BAXTER CREDIT UNION CHRISITNE
PFLIEGER
400 N LAKEVIEW PARKWAY VERNON HILLS, IL  60061

When recorded, please return to:
BAXTER CREDIT UNION
400 N LAKEVIEW PARKWAY
VERNON HILLS, IL  60061

We certify that this is a true, correct, and accurate copy of the original instrument

Chicago Title and Trust Company
By _____

State of Illinois ─────────────────────── Space Above This Line For Recording Data ───────

# MORTGAGE
## (With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is ................05-15-2006................ and the parties, their addresses and tax identification numbers, if required, are as follows:

    MORTGAGOR: MICHAEL A. CURRY, JR. AND DEBRA S. CURRY, HUSBAND AND WIFE
    214 CHESAPEAKE BAY
    WINTHROP HARBOR, IL  60096

    LENDER:    BAXTER CREDIT UNION
    ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF ILLINOIS
    400 N LAKEVIEW PARKWAY
    VERNON HILLS, IL  60061

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, sells, conveys, mortgages and warrants to Lender the following described property:
    SEE ATTACHED EXHIBIT A

    The property is located in ................LAKE................ at 214 CHESAPEAKE BAY................
    (County)
    ................................................................ ................WINTHROP HARBOR............, Illinois ......60096......
    (Address)                                                  (City)                              (ZIP Code)

    Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
    A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)*
    A NOTE BEARING THE SAME DATE AND TERMS

ILLINOIS - MORTGAGE (NOT FOR FNMA, FHLMC, FHA OR VA USE)                                                                    *(page 1 of 6)*
Experts™ ©1994 Bankers Systems, Inc., St. Cloud, MN  Form RE-MTG-IL  12/14/2001

B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Mortgagor in favor of Lender after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All obligations Mortgagor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

4. **PAYMENTS.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

5. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:
   A. To make all payments when due and to perform or comply with all covenants.

   B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.

   C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

6. **CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

7. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

8. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims and actions against Mortgagor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

9. **AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

10. **ASSIGNMENT OF LEASES AND RENTS.** Mortgagor assigns, grants, bargains, conveys, mortgages and warrants to Lender as additional security all the right, title and interest in the following (all referred to as Property): existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including any extensions, renewals, modifications or replacements (all referred to as Leases); and rents, issues and profits (all referred to as Rents). In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement. Mortgagor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default.

Upon default, Mortgagor will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Mortgagor agrees that this Security Instrument is immediately effective between Mortgagor and Lender and effective as to third parties on the recording of this Assignment. As long as this Assignment is in effect, Mortgagor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants.

11. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

12. **DEFAULT.** Mortgagor will be in default if any party obligated on the Secured Debt fails to make payment when due. Mortgagor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

13. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default. Upon default, Lender shall have the right, without declaring the whole indebtedness due and payable, to foreclose against all or part of the Property. This Mortgage shall continue as a lien on any part of the Property not sold on foreclosure.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

Experts©   ©1994 Bankers Systems, Inc., St. Cloud, MN  Form RE-MTG-IL  12/14/2001

*(page 3 of 6)*

14. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Security Instrument. Mortgagor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released.

15. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

    Mortgagor represents, warrants and agrees that:
    A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

    B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

    C. Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.

    D. Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

16. **CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

17. **INSURANCE.** Mortgagor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding sentence can change during the term of the loan. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

Experts ©1994 Bankers Systems, Inc., St. Cloud, MN  Form RE-MTG-IL 12/14/2001

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

18. **ESCROW FOR TAXES AND INSURANCE.** If otherwise provided in a separate agreement, Mortgagor may be required to pay to Lender funds for taxes and insurance in escrow.

19. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

20. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

21. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

22. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

23. **WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all appraisement and homestead exemption rights relating to the Property.

*Exp̲e̲r̲e̲S̲*   ©1994 Bankers Systems, Inc., St. Cloud, MN   Form RE-MTG-IL   12/14/2001

*(page 5 of 6)*

24. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ 52,500.00 ......................... . This limitation of amount does not include interest, attorneys fees, and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

25. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

☐ **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]

☐ Condominium Rider  ☐ Planned Unit Development Rider  ☐ Other ..........................................

☐ **Additional Terms.**

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

☐ If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their signatures and acknowledgments.

.................................................................... .................. ....................................................................... ..............
(Signature) MICHAEL A. CURRY, JR.        (Date)    (Signature) DEBRA S. CURRY                (Date)

**ACKNOWLEDGMENT:**
(Individual)
STATE OF ILLINOIS ............................................., COUNTY OF Lake ...................................) ss.
This instrument was acknowledged before me this .......15TH..... day of ...........MAY, 2006.............
by MICHAEL A. CURRY, JR.; DEBRA S. CURRY, HUSBAND AND WIFE .............................
My commission expires: .........................................
(Seal)                                   ...................................................
                                         (Notary Public)

"OFFICIAL SEAL"
DEBORAH L. OGG
Notary Public, State of Illinois
My Commission Expires 03/06/08

ExpertS ©1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-IL 12/14/2001